

FILED IN OPEN COURT
U.S.D.C. Atlanta

NOV - 9 2016

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

OLUWATOYIN SOLARIN

Criminal Information

No. 1:16-CR-392

THE UNITED STATES ATTORNEY CHARGES THAT:

## Count One
### *Conspiracy to Commit Health Care Fraud*
(18 U.S.C. § 371)

1.  Beginning on a date unknown, but from at least in or about April 2009, and continuing through in or about November 2013, in the Northern District of Georgia, the defendant, OLUWATOYIN SOLARIN, did combine, conspire, confederate, agree, and have a tacit understanding with others known and unknown to the United States Attorney to commit health care fraud, that is, to knowingly and willfully execute and attempt to execute a scheme and artifice to defraud Medicaid, which is a health care benefit program affecting commerce, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, the Georgia Medicaid Program and Peach State, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

## Background

At all relevant times to the Information:

2.  "Care Dental" was a dental clinic with offices in the cities of Doraville, Georgia and Duluth, Georgia, within the Northern District of Georgia.  The defendant, OLUWATOYIN SOLARIN, was a licensed dentist and was the primary owner of Care Dental.

3.  "Care Investment Properties" and "Care Global Properties" were both registered with the Georgia Secretary of State as for profit businesses.  The defendant, OLUWATOYIN SOLARIN, was involved in operating both of these businesses, which are real estate management firms.

4.  The Georgia Medicaid Program, administered by the Georgia Department of Community Health ("DCH"), Division of Medical Assistance, was established to provide an array of health care services and benefits to those who, due to economic circumstances, could not otherwise afford such health care services and benefits.

5.  The Georgia Medicaid Program is a state-administered healthcare program which provides certain healthcare services for eligible citizens who qualify based on income level under state guidelines. The Georgia Medicaid Program ("Georgia Medicaid") is a "healthcare benefit program" as defined in Title 18, United States Code, Subsection 24(b). Georgia Medicaid is jointly funded by the State of Georgia and federally by the United States Department of Health and Human Services through the Centers for Medicare and Medicaid Services. Individuals who receive benefits under Georgia Medicaid are commonly

referred to as Medicaid "recipients"; specifically those whose providers are reimbursed on a per-service basis through Georgia Medicaid itself, as opposed to managed care entities, are referred to as "fee-for-service" recipients.

6. Peach State Health Plan of Georgia Medicaid ("Peach State") is a managed care entity contracted with Georgia Medicaid to oversee the care of certain Georgia Medicaid recipients who qualify. Peach State is a "healthcare benefit program" as defined in Title 18, United States Code, Subsection 24(b). DentaQuest is a dental benefits administration contractor which receives, processes, and pays dental care providers enrolled with Peach State. Many Peach State Medicaid recipients initially join Medicaid as fee-for-service recipients before moving to Peach State. Peach State is authorized to reimburse medical providers at differing rates than Georgia Medicaid's fee-for-service program pays per service rendered.

7. In order to request reimbursement from Georgia Medicaid or Peach State for services, medical providers, including dentists, must be assigned a unique provider number, and be personally qualified and eligible under Georgia Medicaid policies. As a term of participating in any Medicaid program in Georgia, enrolled providers agree to abide by all applicable Medicaid policies and procedures and agree to take responsibility for all claims for medical services submitted to Medicaid programs for reimbursement. The defendant, OLUWATOYIN SOLARIN, was an enrolled Medicaid provider who was assigned a provider number by the Georgia Department of Community Health.

8. Enrolled Medicaid providers submit requests for reimbursement by means of a "claim." A claim may be submitted either directly in hard copy or by electronic submission to the Georgia Medicaid Program and its fiscal intermediary, HP Enterprises; claims are similarly submitted to Peach State via DentaQuest. Regardless of the method used to submit a claim, dental claims must contain the dentist's unique provider number, the recipient patient's identifying information, the date of service, and the service code matching the specific services rendered.

9. Providers, such as the defendant, OLUWATOYIN SOLARIN, submit claims with the appropriate Current Dental Terminology (CDT) procedure code. These CDT codes are standardized nationwide to ensure submission of claims across information systems and insurance programs remain consistent. Medicaid providers and their staff are required to remain current on appropriate CDT code usage and only bill for codes that are medically necessary, actually performed, and supported by the required medical documentation in patient files.

10. Within dental services, providers may bill for a variety of CDT codes for medically necessary procedures such as cleanings, tooth extractions, and dental restorations, commonly referred to as fillings or sealants, to repair teeth with cavities or other defects, sometimes referred to as "caries" in the dental community. Each tooth is assigned a unique identifier from a standard mouth diagram to assist in tracking services performed on individual teeth.

4

11. A currency transaction report ("CTR") is a report that is submitted on United States Department of Treasury ("Treasury") Financial Crimes Enforcement Network Form 104.  A domestic financial institution is required by federal law to file a CTR with Treasury for each financial transaction that involves United States currency in excess of $10,000.  Such financial transactions include deposits, withdrawals, or exchanges of currency, or other transactions involving the physical transfer of currency from one person to another.

### Manner and Means

12. The defendant, OLUWATOYIN SOLARIN, and others known and unknown to the United States Attorney, were responsible for directing the insurance billing practices of Care Dental. The defendant, OLUWATOYIN SOLARIN, caused false claims to be submitted to Georgia Medicaid and to Peach State, through DentaQuest, falsely indicating that patients had received dental services on specific dates of service, when in fact patients had not received those services on the dates in question.

13. The defendant, OLUWATOYIN SOLARIN, caused Care Dental to use her unique provider number to bill for services on dates that she did not perform any services because she was outside of the State of Georgia and sometimes the United States.

14. The defendant, OLUWATOYIN SOLARIN, caused Care Dental to bill for patients who were ineligible for Medicaid services.  When patients were brought to Care Dental whose eligibility for Medicaid services had expired, the

defendant, OLUWATOYIN SOLARIN, instructed at least one Care Dental employee to backdate claims to false dates that resulted in successfully paid claims for reimbursement. Under defendant OLUWATOYIN SOLARIN's further direction, when recipient patients were currently eligible for a managed care program that paid a lower rate for services than the fee-for-service Medicaid program, Care Dental backdated claims to false dates within the fee-for-service eligibility period instead to maximize payment.

15. The defendant, OLUWATOYIN SOLARIN, hired another dentist, "M.B.", who was not an eligible Georgia Medicaid provider, and caused Care Dental to submit false claims by billing under her provider name and number for services provided by dentist "M.B."

16. The defendant, OLUWATOYIN SOLARIN, then used the proceeds of the conspiracy to purchase rental properties throughout the Atlanta metropolitan area.  The defendant, OLUWATOYIN SOLARIN, withdrew substantial funds from Care Dental accounts and then made deposits under $10,000 into at least one separate bank account, with the intent to cause at least one financial institution to fail to file a Currency Transaction Report.

### Overt Acts

17. In order to carry out the conspiracy and to accomplish the objects thereof, the defendant and known and unknown members of the conspiracy committed various overt acts in the Northern District of Georgia and elsewhere, including, but not limited to, the overt acts listed in this Information.

6

18. On or about the dates listed below, the defendant, OLUWATOYIN SOLARIN caused the submission of the following false claims to the Georgia Medicaid Program and Peach State that falsely represented that she had performed certain procedures on the below-listed dates when in fact she had not performed the procedures on those dates:

| Paragraph | On or About Date of Service | Patient Initials | Last 4 Digits of Medicaid Number | Amount Paid | Medicaid Program |
|---|---|---|---|---|---|
| (a) | 8/16/2011 | P.M. | 2074 | $1795.66 | Fee-for-Service |
| (b) | 8/16/2011 | T.M. | 6668 | $1803.51 | Fee-for-Service |
| (c) | 12/28/2011 | K.T. | 5543 | $2219.14 | Fee-for-Service |
| (d) | 1/13/2012 | S.R. | 6848 | $2064.52 | Fee-for-Service |
| (e) | 6/12/2012 | A.M. | 5628 | $1755.30 | Fee-for-Service |
| (f) | 6/22/2012 | N.G. | 1385 | $1470.67 | Fee-for-Service |
| (g) | 9/20/2012 | R.L. | 7771 | $569.96 | Peach State |
| (h) | 3/20/2013 | C.N. | 7335 | $2046.93 | Fee-for-Service |
| (i) | 3/30/2013 | R.R. | 1059 | $598.10 | Peach State |

19. On or about the dates listed below, the defendant, OLUWATOYIN SOLARIN, aided and abetted by each other and others known and unknown to the United States Attorney, did knowingly engage and attempt to engage in monetary transactions by, through and to a financial institution, affecting interstate commerce, as described below, each such transaction knowingly involving criminally derived property of a value greater than $10,000, such

7

property having been derived from a specified unlawful activity, that is healthcare fraud, in violation of Title 18, United States Code, Section 1347:

| Paragraph | Date | Monetary Transaction |
|---|---|---|
| (a) | 09/22/2011 | $18,903.19 wired from Bank of America account ending in 1383 in the name of Care Dental LLC to "K.L.F." referencing "2123 //Grove Way." |
| (b) | 09/28/2012 | $29,000.00 wired from Bank of America account ending in 1383 in the name of Care Dental LLC to "W.N.C." referencing "7700 Bernando Dr." |
| (c) | 01/11/2013 | $39,793.76 wired from Bank of America account ending in 1383 in the name of Care Dental LLC to "O. S. A." referencing "2555 Flat Shoals Rd." |
| (d) | 01/22/2013 | $39,336.96 wired from Bank of America account ending in 1383 in the name of Care Dental LLC to "M &C" referencing "N O 11475 South." |
| (e) | 07/31/2013 | $20,000.00 wired from Bank of America account ending in 1383 in the name of Care Dental LLC to "W. N. C" referencing "File No. SL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-RC." |
| (f) | 08/01/2013 | $20,000.00 wired from Bank of America account ending in 1383 in the name of Care Dental LLC to "W.N.C." referencing "Incoming Wire Escrow Account." |

20. On or about the dates below, in the Northern District of Georgia, the defendant, OLUWATOYIN SOLARIN, did knowingly, and for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a), and any regulation prescribed thereunder, cause and attempt to cause JP Morgan Chase, a domestic financial institution, to fail to file a report required under Title 31, United States Code, Section 5313(a), and any regulation

prescribed thereunder, and did so as part of a pattern of illegal activity

involving more than $100,000 in a 12-month period:

| Paragraph | Date | Deposit Amounts | Bank Account Number |
|---|---|---|---|
| (a) | 11/19/2012<br>11/19/2012 | $9,900.00<br>$9,900.00 | JP Morgan Chase Bank Account Number ending in 3637 |
| (b) | 11/26/2012<br>11/26/2012 | $9,900.00<br>$9,900.00 | JP Morgan Chase Bank Account Number ending in 3637 |
| (c) | 12/31/2012<br>12/31/2012 | $9,900.00<br>$8,000.00 | JP Morgan Chase Bank Account Number ending in 3637 |
| (d) | 1/8/2013<br>1/8/2013 | $9,900.00<br>$9,900.00 | JP Morgan Chase Bank Account Number ending in 3637 |

21. On or about the dates specified below, in the Northern District of Georgia,

the defendant, OLUWATOYIN SOLARIN, did knowingly, and for the purpose

of evading the reporting requirements of Title 31, United States Code, Section

5313(a), and any regulation prescribed thereunder, cause and attempt to cause

JP Morgan Chase, a domestic financial institution, to fail to file a report

required under Title 31, United States Code, Section 5313(a), and any regulation

prescribed thereunder, and did so as part of a pattern of illegal activity

involving more than $100,000 in a 12-month period:

| Paragraph | Date | Deposit Amounts | Bank Account Number |
|:---:|:---:|:---:|:---:|
| (a) | 11/27/2012 | $9,900.00 | JP Morgan Chase Bank Account Number ending in 3637 |
|  | 11/28/2012 | $9,000.00 |  |
| (b) | 12/10/2012 | $4,000.00 | JP Morgan Chase Bank Account Number ending in 3637 |
|  | 12/11/2012 | $9,900.00 |  |
|  | 12/12/2012 | $3,000.00 |  |
| (c) | 12/20/2012 | $9,900.00 | JP Morgan Chase Bank Account Number ending in 3637 |
|  | 12/21/2012 | $9,900.00 |  |
| (d) | 12/27/2012 | $9,900.00 | JP Morgan Chase Bank Account Number ending in 3637 |
|  | 12/28/2012 | $9,900.00 |  |
| (e) | 1/9/2013 | $9,900.00 | JP Morgan Chase Bank Account Number ending in 3637 |
|  | 1/10/2013 | $9,900.00 |  |

All in violation of Title 31, United States Code, Section 371.

**Forfeiture**

22. The United States Attorney re-alleges and incorporates herein by reference the factual allegations set forth in paragraphs 2 through 16.

23. Upon conviction for Count 1 of this Indictment, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property

constituting or derived from proceeds obtained directly or indirectly as a result of said violations, including but not limited to the following:

a.     1103 Hidden Brook Trail, College Park, Clayton County, Georgia

b.     168 Brookview Drive, Riverdale, Clayton County, Georgia

c.     268 Brookview Drive, Riverdale, Clayton County, Georgia

d.     184 Brookview Drive, Riverdale, Clayton County, Georgia

e.     7109 Brookview Way, Riverdale, Clayton County, Georgia

f.     1915 Grove Way, Hampton, Clayton County, Georgia

g.     377 Brookview Drive, Riverdale, Clayton County, Georgia

h.     7066 Brookview Creek, Riverdale, Clayton County, Georgia

i.     7063 Brookview Circle, Riverdale, Clayton County, Georgia

j.     1752 Fielding Way, Hampton, Clayton County, Georgia

k.     2079 Grove Way, Hampton, Clayton County, Georgia

l.     1761 Glen View Way, Hampton, Clayton County, Georgia

m.     1910 Grove Way, Hampton, Clayton County, Georgia

n.     1262 Brookstone Road, Atlanta, Clayton County, Georgia

o.     2555 Flat Shoals Road, Unit No. 1407, College Park, Fulton County, Georgia.

24. If, as a result of any act or omission of the defendant, any property subject to forfeiture:

    a.  Cannot be located upon the exercise of due diligence;

    b.  Has been transferred or sold to, or deposited with, a third person;

    c.  Has been placed beyond the jurisdiction of the Court;

    d.  Has been substantially diminished in value; or

    e.  Has been commingled with other property which cannot be subdivided without difficulty;

The United States intends, pursuant to Title 18, United States Code, Section 982(b) and Title 21, United States Code, Section 853(p), and Title 28, United

States Code, Section 2461(c) to seek forfeiture of any property of said defendant up to the value of the forfeitable property.

A _____ BILL

HOREPERSON

JOHN A. HORN
  *United States Attorney*

THOMAS J. KREPP
  *Assistant United States Attorney*
Georgia Bar No. 346781

LYNDIE M. FREEMAN
  *Special Assistant United States Attorney*
Georgia Bar No. 119499

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181

13